```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND


GEORGE SCOTT,                          :
          Petitioner,                  :
                                       :
     v.                                :        CA 08-180 S
                                       :
DENIS RIORDAN, District Director       :
of Bureau of Citizenship and           :
Immigration Services; ROSETTA R.       :
MARTINI, Field Office Director         :
of Bureau of Citizenship and           :
Immigration Services; and              :
BUREAU OF CITIZENSHIP AND              :
IMMIGRATION SERVICES,                  :
          Respondents.                 :
```

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is Respondents' Motion for Summary Judgment (Doc. #6) ("Motion for Summary Judgment" or "Motion"). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). I have determined that no hearing is necessary as the Motion is unopposed.[1]  After reviewing the filings and performing

---

[1] The Motion is unopposed because Petitioner's opposition has been stricken. See Order Granting Motion to Strike and Denying Motion to Enlarge (Doc. #18) ("Order of 10/16/08"). The opposition was stricken because: 1) it was filed after the August 14, 2008, deadline for filing an objection to the Motion for Summary Judgment and Petitioner did not obtain leave from the Court to file an objection out of time, and 2) the opposition was unsigned. See id. at 1-2.  The Court also denied Petitioner's motion for an enlargement of the time within which to file the opposition, see id. at 8, because he failed to show excusable neglect, see id. at 3-6, and because the filings for which he sought leave to file out of time failed to comply with the Local Rules, see id. at 6.  In particular, Petitioner's response to Respondents' Statement of Disputed Facts (Doc. #7) ("SUF") was

independent research, I recommend that the Motion be granted.

**I.  Background**

Petitioner George Scott ("Petitioner" or "Scott") filed this action pursuant to 8 U.S.C. § 1421(c), seeking judicial review of the denial of his application for naturalization by Respondent United States Citizenship and Immigration Services ("CIS").  See Petition for Review of Denial of Application for Naturalization Pursuant to 8 U.S.C. § 1421(c) and Request for de Novo Hearing (Doc. #1) ("Petition").  The final administrative denial of Scott's application occurred on January 25, 2008.  See Declaration of Carole Karlowicz ("Karlowicz Decl."),[2] Exhibit ("Ex.") 16 (Decision).  On that date Respondent Rosetta R. Martini ("Martini"), a Field Office Director for CIS, issued a written decision dismissing Scott's appeal of an earlier denial of his application.  See id.  In her decision, Martini stated that Scott's application had been denied for lack of good moral character.  See id. at 1.  The basis for this finding was that Scott had given false testimony in an attempt to gain an immigration benefit when he completed his N-400 Application for Naturalization ("N-400 Application") and during his N-400 interview on March 6, 2006.  Specifically, the false testimony on the application consisted of Scott's failure to disclose charges of operating after a suspended license in October 2002 and "[c]ompulsory [i]nsurance [v]iolation," id., in November 2001.  In addition, Martini also stated that Scott had given false

---

not numbered so as to correspond to the facts numbered in the SUF, as required by D.R.I. LR Cv 56(a)(3).  See Order of 10/16/08 at 7.  Additionally, Petitioner's response did not identify the evidence which established that a fact stated in the SUF was disputed, as required by the same Local Rule.  See id.

[2] The Karlowicz Decl. is Exhibit ("Ex.") A to the Memorandum in Support of Respondents' Motion for Summary Judgment.

testimony during his interview in 2002 to gain lawful permanent status by stating under oath that he had only been arrested once, when in fact he had been arrested twice for domestic assault in Providence, Rhode Island, and arrested at least once in Massachusetts.[3]  Id.

**II.  Travel**

Scott filed this action on May 9, 2008.  Respondents filed their Motion for Summary Judgment on July 28, 2008.  Petitioner failed to file a timely objection to the Motion, and his attempt to file a belated objection was denied on October 16, 2008.[4]  Thereafter, the Court took the matter under advisement.

**III.  Standard of Review**

The Court reviews denial of an application for naturalization de novo and makes its own findings of fact and conclusions of law regarding eligibility for naturalization.  See 8 U.S.C. § 1421(c).  Title 8, United States Code, section 1421(c) provides:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5.  Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c).

**IV.  Findings of Fact**

Petitioner is a native and citizen of Liberia.  Respondents'

---

[3] The arrest in Massachusetts was for the compulsory insurance violation.  See Karlowicz Decl., Ex. 9 (Criminal History Systems Board) at 4.  The charge was subsequently dismissed.  See id.

[4] See n.1.

3

Statement of Undisputed Facts (Doc. #7) ("SUF") ¶ 1. On October 8, 1990, he was convicted of domestic assault and sentenced to one year of probation in Rhode Island district court. SUF ¶ 2. On March 4, 1992, Petitioner was again convicted of domestic assault and sentenced to one year probation in Rhode Island district court. SUF ¶ 3. Two weeks later, on March 16, 1992, Petitioner submitted his first application for temporary protected status. SUF ¶ 4. In response to a question which asked "have you been convicted of any felony or 2 or more misdemeanors committed in the United States," id., Petitioner wrote that he had a "fight with girl friend," id. The application also asked "have you been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance ...," SUF ¶ 5 (alteration in original), to which Petitioner responded "[n]o," id. (alteration in original). In addition, the application instructed that if any of these statements applied to Petitioner, he was to "include a full explanation on a separate piece of paper." SUF ¶ 6. The application further instructed that Petitioner was to provide the disposition of any arrest from the appropriate authority. SUF ¶ 7. Despite the questions and instructions requiring him to disclose all arrests, charges, and convictions on his application for temporary protected status, Petitioner failed to disclose his two prior convictions for domestic assault. SUF ¶ 8. Had Petitioner identified his two prior convictions for domestic assault, he would have been ineligible for temporary protected status. SUF ¶ 9; see also 8 C.F.R. § 244.4(a).

In 1992 and again in 1993, Petitioner filed applications for temporary protected status which were subsequently approved. SUF ¶ 10. In both applications, he failed to disclose his domestic assault convictions. SUF ¶ 11. In response to the questions which asked "have you been convicted of any felony or 2 or more

4

misdemeanors committed in the United States," SUF ¶ 12, and "have you been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance ...," id. (alteration in original), Petitioner responded "[n]o," id. (alteration in original).

On August 10, 1994, a criminal complaint was filed against Petitioner for the felony charge of state lottery fraud in the Minnesota district court.  SUF ¶ 13.  Prior to the case being dismissed, Petitioner was ordered to pay restitution of $30.00.  SUF ¶ 14; Karlowicz Decl., Exs. 5 (Restitution Referral), 6 (Cash Receipt).

On or about November 5, 2001, Petitioner was charged with compulsory insurance violation.  SUF ¶ 15.  This violation was subsequently dismissed.  SUF ¶ 16.  On January 15, 2002, Petitioner filed an application to adjust his status to that of a lawful permanent resident of the United States, Form I-485.  SUF ¶ 17.  The application asked "[h]ave you ever, in or outside the U.S. ... been arrested, cited, charged, indicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic violation?"  SUF ¶ 18 (alterations in original).  In response, Petitioner checked the box marked "No."  SUF ¶ 19.

On September 11, 2002, Petitioner was interviewed, under oath, by an immigration officer concerning the information contained in his adjustment application.  SUF ¶ 20.  During this interview, Petitioner stated that he was arrested one time for an incident involving the lottery.  SUF ¶ 21.  Petitioner, however, failed to disclose to the immigration officer that he had been convicted in 1990 and 1992 of domestic assault in Rhode Island.  SUF ¶ 22.  His application for adjustment of status, in which he failed to disclose his domestic assault convictions, was approved, and he became a lawful permanent resident of the United

States on September 11, 2002. SUF ¶ 23. Approximately six weeks later, on or about October 28, 2002, Petitioner was charged with operating a vehicle under a suspended license. SUF ¶ 24. This charge was subsequently dismissed. Id.

On October 10, 2003, Petitioner was stopped at Logan Airport in Boston upon his return from a trip overseas and was ordered to appear for a deferred inspection. SUF ¶ 25. He was instructed to provide his criminal record for inspection. SUF ¶ 26.

Petitioner filed the application for naturalization which is at issue in this action with CIS on December 12, 2005. SUF ¶ 27. The application, Form N-400, advised Petitioner that:

> For purposes of this application, you must answer "Yes" to the questions, if applicable, even if your records were sealed or otherwise cleared or if anyone, including a judge, law enforcement officer or attorney, told you that you no longer have a record.

SUF ¶ 28. Petitioner checked "Yes" in response to the questions which asked "[h]ave you ever been arrested, cited or detained by any law enforcement officer (including USCIS or former INS and military officers) for any reason?" and "[h]ave you ever been charged with committing any crime or offense." SUF ¶ 29 (alterations in original). Petitioner was then required to elaborate on the questions to which he responded, "Yes." SUF ¶ 30. Petitioner identified that he was arrested, cited, detained, or charged for the following three offenses:

1. $30.00 LOTTERY FRAUD CAS[E], Aug. 10, 1994, MINNESOTA, DISMISSED;
2. SLAP GIRL FRIEND, 1992, PROVIDENCE, PROBATION; and
3. FIGHT WITH GIRLFRIEND, 1993, PROVIDENCE, PROBATION

SUF ¶ 31 (alteration in original). Moreover, on the application Petitioner responded "No," to the question which asked, "[h]ave you ever given false or misleading information to any U.S.

6

government official while applying for any immigration benefit or to prevent deportation, exclusion or removal?" SUF ¶ 32 (alteration in original). Petitioner made no mention that on his prior application for permanent residence he had failed to disclose that he had been arrested in 1990 and 1992 for domestic assault in Rhode Island. SUF ¶ 33.

On March 6, 2006, Petitioner was interviewed, under oath, by an immigration officer concerning the information in Petitioner's naturalization application. SUF ¶ 34. Petitioner confirmed that he was charged with the three offenses listed on his application. SUF ¶ 35. At the conclusion of the interview, Petitioner re-signed the N-400 form, affirming that the information in the naturalization application was true and correct. SUF ¶ 36. Thereafter, on January 24, 2007, CIS issued a decision denying Petitioner's application for naturalization due to lack of good moral character. SUF ¶ 37. In this decision, CIS noted that Petitioner failed to disclose the charge for operating a vehicle under a suspended license in the Worcester district court in October 2002 and the compulsory insurance violation charge in the Uxbridge district court in November 2001. SUF ¶ 38. The decision further stated that, although these charges were ultimately dismissed, Petitioner's failure to disclose them had denied the examining officer a pertinent line of inquiry. SUF ¶ 39.

Petitioner then filed a request for a hearing on the denial of his naturalization application pursuant to 8 C.F.R. § 336.2. SUF ¶ 40. In his request for a hearing, Petitioner did not refute that he failed to disclose these two charges which he admitted "took place about fifteen years ago." SUF ¶ 41. Petitioner stated that he believed CIS was aware of his arrest record because he had provided his arrest records after having been stopped about two years prior at Boston Logan Airport:

> About two years ago while returning from a over seas
> trip, I was stop [sic] at the Boston Logan Air port
> [sic], at which time the issue of these record [sic] came
> up again when my finger print [sic] was taken [sic] and
> I was ask [sic] to bring all my arrest record [sic]
> including those two we are now talking about right now,
> I did and thinking that from now on they were going to be
> in my file with you people to see, so why then will I
> hide it from you people.

SUF ¶ 42 (alterations in original).

On May 16, 2007, Petitioner was interviewed by an immigration officer on his appeal application. SUF ¶ 43. During the interview, Petitioner asserted that CIS already had the information regarding these two charges because they were included in his application for permanent residence and the information had been provided to CIS after he had been stopped at Boston's Logan Airport. SUF ¶ 44. Petitioner also maintained that because these charges were minor and had been dismissed, CIS should reconsider its decision. SUF ¶ 45.

CIS issued a final decision on January 25, 2008, denying Petitioner's naturalization application. SUF ¶ 46. CIS determined that Petitioner gave false testimony on his naturalization application by failing to disclose the charge of operating a vehicle under a suspended license and also the charge of compulsory insurance violation. SUF ¶ 47. CIS further found that Petitioner gave false testimony on September 11, 2002, when he was interviewed by an immigration officer concerning the information contained in his application for permanent residence. SUF ¶ 48. During that interview, Petitioner stated that he was arrested "one time," SUF ¶ 49, for an incident involving the lottery, id. Contrary to Petitioner's statement, Petitioner had in fact been arrested and convicted of domestic assault on two separate occasions in Rhode Island. SUF ¶ 50. In addition, CIS stated that had Petitioner revealed his domestic assault

convictions, Petitioner could have been denied permanent residence.  SUF ¶ 51.

**V.  Summary Judgment Standard**

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006)(quoting Fed. R. Civ. P. 56(c)); accord Kearney v. Town of Wareham, 316 F.3d 18, 21 (1st Cir. 2002).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.  A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law."  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)(quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party."  Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000)(citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)).  The non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial.  See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 53 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505 (1986)).  "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to

enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002)(quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993))(alteration in original)(internal quotation marks omitted).

"[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." Gannon v. Narragansett Elec. Co., 777 F. Supp. 167, 169 (D.R.I. 1991) (citation and internal quotation marks omitted).

**VI. Discussion**

An alien seeking to obtain the privileges and benefits of citizenship bears a heavy burden of proof. Berenyi v. Dist. Dir., Immigration & Naturalization Servs., 385 U.S. 630, 636-37, 87 S.Ct. 666 (1967). "[I]t has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect." Id. at 637. Indeed, the Supreme Court "has often stated that doubts should be resolved in favor of the United States and against the claimant." Id. (internal quotation marks omitted).

Although Title 8, section 1421(c) provides that "the court ... shall, at the request of the petitioner, conduct a hearing de novo on the application [for naturalization]," 8 U.S.C. § 1421(c), if a court concludes that there is no genuine issue of material fact, it may enter summary judgment without conducting a de novo hearing, see Chan v. Gantner, 464 F.3d 289, 296 (2nd Cir.

2006)(rejecting interpretation of § 1421(c) which would require district courts to hold bench trials even when there are no disputed issues of fact); Ni v. U.S. Citizenship & Immigration Servs., No. CV 08-3883 CAS (AJWx), 2009 WL 649156, at *4 (C.D. Cal. Mar. 9, 2009)(citing Chan v. Gantner). As already noted, there are no disputed issues of fact in this case. Accordingly, a hearing is unnecessary.

In order to be eligible for naturalization, an applicant must, among other things, be a person of good moral character. 8 U.S.C. § 1427(a); see also St. Amanze v. Immigration & Naturalization Serv., No. Civ.A. 02-502T, 2003 WL 22061870, at *1 (D.R.I. Mar. 28, 2003)(citing statute). An applicant is deemed to lack good moral character if he falls into one of the seven non-exclusive classifications listed in 8 U.S.C. § 1101(f)(1)-(8).[5] St. Amanze, 2003 WL 22061870, at *1 n.1. At issue in this

---

[5] Title 8, section 1101(f)(1)-(8) lists the following classifications:

(1) a habitual drunkard;

(2) Repealed. Pub.L. 97-116, § 2(c)(1), Dec. 29, 1981, 95 Stat. 1611.

(3) a member of one or more of the classes of persons, whether inadmissible or not, described in paragraphs (2)(D), (6)(E), and (10)(A) of section 1182(a) of this title; or subparagraphs (A) and (B) of section 1182(a)(2) of this title and subparagraph (C) thereof of such section (except as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana), if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period;

(4) one whose income is derived principally from illegal gambling activities;

(5) one who has been convicted of two or more gambling offenses committed during such period;

case is classification six, which states that an applicant lacks good moral character if he "has given false testimony for the purpose of obtaining any [immigration] benefits ...." 8 U.S.C. § 1101(f)(6).

Scott argues that his failure to disclose the two charges in Massachusetts on his N-400 Application and N-400 interview on March 6, 2006, was not done with the intent to secure an immigration benefit. See Memorandum of Law ("Petitioner's Mem.")[6] at 2 (citing St. Amanze v. Immigration & Naturalization Serv., 2003 WL 22061870, at *2 ("The fact that a statement is incorrect does not, by itself, establish that an applicant has 'given false testimony.'  The applicant also must have intended to deceive the INS.")(quoting Plewa v. Immigration & Naturalization Serv., 77 F.Supp.2d 905, 910 (N.D. Ill. 1999))).  In support of this contention, Scott offers three arguments or explanations relative

---

**(6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;**

(7) one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;

(8) one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section).

The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character.

8 U.S.C. § 1101(f)(1)-(8) (footnote omitted)(bold added).

[6] Petitioner's Mem. is attached to the Petition.

12

to the nondisclosure.  First, he argues that CIS already knew about the charges because he "had submitted the record pertaining to the two charges, along with other previous charges, to the DHS [Department of Homeland Security] at the Logan Airport following his apprehension after a brief visit abroad in November 2003." Petition ¶ 18.  Second, he asserts that "since he had been charged erroneously and the two cases were subsequently dismissed by the court, his impression was that the charges were not required."  Id.  Third, he contends that he "innocently believed that since traffic-related charges are excepted from the criminal record required when one is applying for lawful permanent residence, the charges would similarly be excepted and hence not required when applying for naturalization."  Id.

Scott, however, offers no explanation or argument with respect to the second ground for the denial of his application, i.e., that he gave false testimony at his 2002 interview to gain lawful permanent resident status when he stated under oath that he had only been arrested once (the Minnesota lottery charge) when in fact he had been twice convicted of domestic assault in Rhode Island and arrested once in Massachusetts for the compulsory insurance violation.[7]  Thus, even if the Court were persuaded by Scott's arguments relative to his failure to disclose the two Massachusetts charges with respect to the N-400 Application and March 6, 2006, interview, Respondents are still

---

[7] It bears noting that the lawful permanent resident status interview occurred on September 11, 2002, see Karlowicz Decl., Ex. 8 (Form I-485) at 1, which is within five years of the date of the November 30, 2005, application for naturalization which is the subject of the instant action, see id., Ex. 11 (N-400 Application for Naturalization ("N-400 Application")).  The statutory period for which good moral character is required begins five years before the application is filed and continues until the applicant becomes a United States citizen.  See 18 U.S.C. § 1427(a)(3).

13

entitled to summary judgment as Scott has totally failed to meet his burden with respect to this separate ground for denial of his application.

Furthermore, the fact that Scott failed to disclose his two convictions for domestic assault when he applied for temporary protected status in 1992 provides an additional reason for CIS's denial of his application.  Had Scott identified his two prior convictions for domestic assault, he would have been ineligible for temporary protected status.  See 8 C.F.R. § 244.4(a) (2008).[8]  The fact that the nondisclosure occurred outside the five year period preceding the filing of the instant application does not mean that it may not be considered.  See Islam v. Harrington, No. 3:00-CV-1683-P, 2001 WL 1335851, at *8 (N.D. Tex. Oct. 23, 2001) ("Under the INA [Immigration and Naturalization Act], when determining whether an applicant has sustained the burden of establishing good moral character, the examination is not limited to the applicant's conduct during the five years preceding the filing of the application, but may also take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period."); see also 8 U.S.C. §

---

[8] Title 8, Code of Federal Regulations, section 244.4 provides:

> An alien is ineligible for Temporary Protected Status if the alien:
>
> (a) Has been convicted of any felony or two or more misdemeanors, as defined in § 244.1, committed in the United States, or
>
> (b) Is an alien described in section 243(h)(2) of the Act.

8 C.F.R. § 244.4 (2008).

1427(e);[9] 8 C.F.R. § 316.10(a)(2)(2008).[10]

    Finally, it also bears noting that on his 1993 and 1994 applications for temporary protected status Petitioner denied that he had been convicted of 2 or more misdemeanors, see Karlowicz Decl., Ex. 18 at 2; id., Ex. 19 at 2, and denied that he had been arrested, cited, or charged for violating any law or ordinance, see id. at 3.  Yet the 1993 application was signed by Petitioner on April 6, 1993, only thirteen months after his

---

    [9] Title 8, section 1427(e) provides:

> In determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection (a) of this section, the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period.

8 U.S.C. § 1427(e).

    [10] Title 8, Code of Federal Regulations, section 316.10(a)(2) provides:

> (2) In accordance with section 101(f) of the Act, the Service shall evaluate claims of good moral character on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence. The Service is not limited to reviewing the applicant's conduct during the five years immediately preceding the filing of the application, but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period, if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character.

8 C.F.R. § 316.10(a)(2) (2008).

second conviction for domestic assault and only a month after the expiration of the probation which he had received for that offense. Given that this was his second conviction for domestic assault and that as a condition of probation he was required to attend "counseling," id., Ex. 2, it is highly unlikely that Petitioner forgot about this incident and that his negative responses were due to a lapse of memory.

In summary, Petitioner has offered nothing to rebut Respondents' finding that he gave false testimony at his 2002 interview to gain lawful permanent resident status. A person cannot be found to have good moral character if he gives false testimony for the purpose of obtaining immigration benefits during the statutory period. Ni v. U.S. Citizenship & Immigration Servs., 2009 WL 649156, at *3; 8 C.F.R. § 316.10(a)(1). Thus, Petitioner has failed to satisfy his burden of presenting enough competent evidence to enable a finding favorable to the nonmoving party. See ATC Realty, LLC v. Town of Kingston, 303 F.3d at 94. Based on the undisputed evidence, Respondents properly denied Petitioner's application. They are entitled to summary judgment, and I so recommend.

## VII. Conclusion

For the foregoing reasons, I recommend that Respondents' Motion for Summary Judgment be granted. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10)[11] days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete,

---

[11] The ten days do not include intermediate Saturdays, Sundays, and legal holidays. See Fed. R. Civ. P. 6(a).

792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
April 21, 2009